UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| JAMES C. BURGETTE | * | CIVIL ACTION NO.  12-1155 |
| VERSUS | * | JUDGE S. MAURICE HICKS |
| CAROLYN W. COLVIN, ACTING COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | * | MAG. JUDGE KAREN L. HAYES |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits.  The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

### Background & Procedural History

James Burgette filed the instant application for Title II Disability Insurance Benefits on March 19, 2010.  (Tr. 86-87).  He alleged disability as of August 1, 2008, because of his back, neck, spine disease, pain, and hypertension.  (Tr. 99, 108, 24).  The claim was denied at the initial stage of the administrative process.  (Tr. 35-48).  Thereafter, Burgette requested and received a September 15, 2010, hearing before an Administrative Law Judge ("ALJ").  (Tr. 16-34).  However, in an October 29, 2010, written decision, the ALJ determined that Burgette was not disabled under the Act, finding at step four of the sequential evaluation process that he was able to return to past relevant work as an auto parts assembler.  (Tr. 4-13).  Burgette appealed the adverse decision to the Appeals Council.  On March 6, 2012, however, the Appeals Council denied Burgette's request for review; thus the ALJ's decision became the final decision of the

Commissioner.  (Tr. 1-3).

On May 3, 2012, Burgette sought review before this court.  He alleges the following errors,

> 1) the ALJ erred in failing to find that Plaintiff suffers from severe impairments of degenerative spine disease, wheezing, sleep apnea, edema, and/or fatigue/malaise at step two of the sequential evaluation process;
>
> 2) the ALJ's residual functional capacity assessment is flawed because she improperly excluded the findings of Plaintiff's treating physician, Dr. Thompson, that he suffered from degenerative spine disease, wheezing, sleep apnea, edema, and fatigue/malaise.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards.  *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).  Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed.  *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards.  *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. at 401.  Substantial evidence lies somewhere between a scintilla and a preponderance.  *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).  A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination.  *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).  The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted).

## Determination of Disability

2

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional

> capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

See *Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

### I.     Steps One, Two, and Three

The ALJ determined at step one of the sequential evaluation process that Burgette had not engaged in substantial gainful activity during the relevant period. (Tr. 9). At step two, she found that he suffers severe impairments of morbid obesity and elevated blood pressure, without diagnosis of hypertension. *Id*. She concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process. *Id*.

Plaintiff contends that the ALJ erred by failing to include edema, sleep apnea, wheezing, fatigue/malaise, and degenerative spine disease as severe impairments. In assessing the severity of an impairment, the Fifth Circuit has determined that "an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000) (citing *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir.1985)). When, as here, however, the ALJ's analysis

proceeds beyond step two of the sequential evaluation process, strict adherence to *Stone* and its requirements is not required. *See Harrell v. Bowen*, 862 F.2d 471, 481 (5th Cir. 1988); *Chapparo v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987); *Jones v. Bowen*, 829 F.2d 524, n. 1 (5th Cir. 1987). Rather, once a severe impairment is determined to exist, all medically determinable impairments must be considered in the remaining steps of the sequential analysis. 20 C.F.R. §§ 404.1523 & 404.1545.

The ALJ recited the foregoing regulation, and proceeded to consider the medical record and the aggregate impact of plaintiff's impairments. *See* Tr. 8-12, and discussion, *infra*. Thus, the critical issue becomes whether the ALJ's residual functional capacity assessment is supported by substantial evidence.[1]

## II. Residual Functional Capacity Assessment

The ALJ determined that Burgette retained the residual functional capacity to perform medium work,[2] except that he can never climb ladders, and only occasionally climb stairs,

---

[1] Plaintiff does not challenge the ALJ's step three determination.

[2] Medium work is defined and explained by Social Security Ruling 83-10:
> [t]he regulations define medium work as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time. Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms.
>
> The considerable lifting required for the full range of medium work usually requires frequent bending-stooping. (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist). Flexibility of the knees as well as the torso is important for this activity. (Crouching is bending both the legs and spine in order to bend the body downward

balance, stoop/bend, kneel, crouch, and crawl. (Tr. 10).

In so deciding, the ALJ partially discounted Burgette's testimony and assigned but "some weight" to the findings of his treating physician, James Thompson, M.D. (Tr. 10-12). Instead, the ALJ assigned "great weight" to the opinion of the consultative physician, Jason Hatfield, M.D. *Id*.

a) <u>Summary of Relevant Medical Evidence</u>

The instant medical record is relatively sparse. Plaintiff's first visit with Dr. Thompson, *during the relevant period*, occurred on or about March 3, 2009, when he went in for a check up and to request a handicap license plate. (Tr. 150-151). At that time, Burgette described his pain as a seven on a ten point scale. *Id*. Dr. Thompson noted malaise and wheezing. *Id*. Upon examination, Burgette exhibited edema in his extremities. *Id*. Thompson, however, did not make any positive findings regarding Burgette's deep tendon reflexes, sensation, gait and station, range of motion, or assessment of muscle strength and tone. *Id*. Thompson diagnosed malaise/weight gain, nocturia, obstructive sleep apnea, wheezing, edema, and lumbar disc disease. *Id*. Thompson ordered a sleep study and prescribed Ibuprofen and Ultram. *Id*.

During the March 3, 2009, office visit, Dr. Thompson signed a Medical Examiner's Certification of Mobility Impairment indicating that Burgette suffered from a permanent impairment that prevented him from walking two hundred feet without stopping to rest. (Tr.

---

and forward). However, there are a relatively few occupations in the national economy which require exertion in terms of weights that must be lifted at times (or involve equivalent exertion in pushing or pulling), but are performed primarily in a sitting position, e.g., taxi driver, bus driver, and tank-truck driver (semi-skilled jobs). In most medium jobs, being on one's feet for most of the workday is critical. Being able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time.

Social Security Ruling 83-10.

146).  He further indicated that Burgette had a diagnosed disease or disorder, including a severe arthritic, neurological, or orthopedic impairment that created a severe mobility limitation.  *Id*.

A March 11, 2009, progress record from Dr. Thompson documents that Ibuprofen and Ultram helped Burgette with his back pain.  (Tr. 147-148).  Although Burgette still had 1+ edema in his bilateral extremities, Thompson again omitted any findings regarding deep tendon reflexes, sensation, gait and station, range of motion, or assessment of muscle strength and tone.  *Id*.  Thompson diagnosed edema, "lipids," "FBS," lumbar disc disease, and hypertension.  *Id*.

Following a March 2009 sleep study, Plaintiff received a CPAP device, on or about April 15, 2009.  (Tr. 141).

On April 30, 2010, Dr. Thompson noted that Burgette's chronic problems included family history of GI Tract cancer, mixed hyperlipidemia, disc disease-cervical, and spinal stenosis-lumbar.  (Tr. 185-187).  Upon examination, he had 1+ edema bilaterally.  *Id*.  He was positive for malaise.  *Id*.

On May 5, 2010, Dr. Thompson documented, without explanation, that he had reviewed unspecified notes from Dr. Nanda.  (Tr. 177).  Thompson did not recount Dr. Nanda's findings.

On May 8, 2010, Burgette underwent a consultative examination administered by Jason Hatfield, M.D.  (Tr. 170-174).  Burgette's chief complaint was degenerative spine disease.  *Id*.  He explained to Hatfield that he suffered from degenerative spine disease to the lower back that was diagnosed via MRI in 2005.  *Id*.  He reported chronic lower back pain since that time, that had worsened over the last two years.  *Id*.  His pain improved only with prescribed pain medication and rest; it was exacerbated by prolonged walking and standing.  *Id*.  Burgette denied malaise, fatigue, recent weight changes, chest pain, edema, dyspnea on exertion, shortness of breath at rest, wheezing, knee pain, and shoulder or neck pain.  *Id*.

Upon examination, he ambulated without assistance.  *Id*.  The straight leg test was

negative, bilaterally. *Id*. He also had a full range of motion in his back and hips. *Id*. He was able to rise from a seated position without assistance, stand on tiptoes, heel and tandem walk without problems, and bend and squat without difficulty. *Id*. His grip was 5/5 with adequate fine motor movements, dexterity, and ability to grasp objects bilaterally. *Id*. He had no edema, and a full range of motion of all extremities. *Id*. He exhibited strong neck movement against resistance. *Id*. X-rays of the lumbar spine showed no evidence of fracture or dislocation; normal alignment and curvature; joint spaces were preserved, with normal lumbosacral spine. *Id*.

Hatfield diagnosed morbid obesity and elevated blood pressure without diagnosis of hypertension. *Id*. He opined that Burgette should be able to sit, walk, and/or stand for a full workday, lift/carry objects without limitations, hold a conversation, respond appropriately to questions, and carry out and remember instructions. *Id*.

Plaintiff's medications as of July 27, 2010, included Aspirin, Ibuprofen, Simvastatin for cholesterol, and Ultram for neck and back pain. (Tr. 176).

    b)    <u>Discussion</u>

Plaintiff takes issue with the ALJ's residual functional capacity assessment. He contends, in effect, that the ALJ erred when she declined to credit all of the symptoms, impairments, and/or diagnoses recognized by Plaintiff's treating physician, Dr. Thompson. The court recognizes that

> "ordinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir.1985). **The treating physician's opinions, however, are far from conclusive. "[T]he ALJ has the sole responsibility for determining the claimant's disability status."** *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir.1990).
>
> **Accordingly, when good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony**. The good cause exceptions we have recognized include

8

>> disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence. *Scott*, 770 F.2d at 485. In sum, the ALJ "is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly." *Id.*; see also 20 C.F.R. § 404.1527(c)(2) ("If any of the evidence in your case record, including any medical opinion(s), is inconsistent with other evidence or is internally inconsistent, we will weigh all the other evidence and see whether we can decide whether you are disabled based on the evidence we have.").

*Greenspan*, 38 F.3d at 237 (emphasis added).

Here, the ALJ acknowledged Dr. Thompson's "opinion," and accorded it "some weight." (Tr. 12). She noted, however, that there were few objective findings in the record, or particularly, in Dr. Thompson's treatment notes, to support any disability. *Id*. Consequently, she assigned "great weight" to the essentially benign opinion of the consulting physician, Dr. Hatfield. *Id*.

In his brief, Plaintiff spills a considerable amount of ink in an effort to demonstrate that the lack of objective findings was not a proper basis for the ALJ to discount Dr. Thompson's opinion. Under the regulations, the Commissioner will confer controlling weight to a treating physician's opinion regarding the nature and severity of the claimant's impairments when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. 404.1527(c)(2). Alternatively, when the Commissioner declines to accord controlling weight to the treating physician's opinion, then she will consider several factors in determining the weight to be given the opinion. *Id*. One of those considerations is supportability, i.e., "[t]he more a medical source presents relevant evidence to support an opinion, *particularly medical signs and laboratory findings*,[3] the more weight [the Commissioner] will give that opinion." 20

---

[3] Laboratory findings are defined elsewhere in the regulations to include such items as blood pressure readings and x-rays. 20 C.F.R. § 404.1513.

C.F.R. 404.1527(c)(2)(ii) (emphasis added).[4]

The court observes that, *during the relevant period*, Dr. Thompson saw plaintiff approximately three times. At Burgette's initial visit on March 3, 2009, following an almost one and one-half year hiatus, Dr. Thompson approved a disabled license plate for Plaintiff, despite positive examination findings for only slight, 1+ edema. *See* Tr. 151. Thompson also included diagnoses for malaise, wheezing, and lumbar disc disease, without any associated positive signs or tests. *Id*.[5] After a follow-up visit on March 11, 2009, Burgette did not return to Dr. Thompson until April 30, 2010, – *more than one year later*.

On the Medical Examiner's Certification of Mobility Impairment form completed by him, Dr. Thompson indicated that Burgette met conditions "1 & 6," i.e. that he had a permanent, diagnosed disease or disorder, including a severe arthritic, neurological, or orthopedic impairment, that prevented him from walking two hundred feet without stopping to rest. *Id*. (Tr. 146). As stated above, however, Thompson's examination findings from that same day failed to document any positive findings typically associated with mobility impairments, such as gait and station disorder, tenderness, range of motion limitations, and muscle weakness. *Id*.

Dr. Thompson's progress notes from Burgette's two other visits in March 2009 and April 2010, also remain devoid of pertinent positive examination findings. Indeed, there is no evidence in the medical record of any diagnostic test results to support Plaintiff's allegation of debilitating degenerative disc disease. Although Plaintiff testified that he underwent an MRI on

---

[4] The ALJ need not perform a detailed analysis of § 404.1527(c) factors where, as here, the record contains reliable medical evidence from another examining physician. *See Holifield v. Astrue*, 402 Fed. Appx. 24 (5th Cir. Nov. 10, 2010) (unpubl.) (citation omitted); *see also Bullock v. Astrue*, 2007 WL 4180549 (5th Cir. 11/27/2007) (unpubl.).

[5] Although Dr. Thomas's forms explain that a check mark equals a negative finding, it is apparent by Dr. Thomas's handwritten notations that a check mark indicated a positive finding. *See e.g.*, Tr. 151.

his back in 2006, *see* Tr. 24-25, the MRI results do not appear in record. Furthermore, although Dr. Thompson stated that he reviewed Dr. Nanda's notes,[6] Thompson did not reveal what Nanda's findings were. Moreover, Dr. Nanda's file itself was not made part of the administrative record.

  To the extent that Plaintiff faults the ALJ for failing to fully and fairly develop the record by not re-contacting Dr. Thompson in an effort to resolve the ALJ's concerns about his findings, or by failing to obtain records from Dr. Nanda, the regulations provide that the Commissioner will seek additional evidence or clarification from a treating source when: 1) the report from the source contains a conflict or ambiguity that needs to be resolved; 2) the report does not contain all of the necessary information; or 3) the report does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1512(e). However, an ALJ's failure to adequately develop the record does not automatically compel reversal. *Hyde v. Astrue*, Docket No. 07-30748 (5th Cir. May 12, 2008) (unpubl.) (citing *Kane v. Heckler*, 731 F.2d 1216 (5th Cir. 1984)). To obtain reversal because of an ALJ's failure to adequately develop the record, the claimant also must demonstrate resulting prejudice. *Brock v. Chater*, 84 F.3d 726 (5th Cir. 1996). "To establish prejudice, a claimant must show that he could and would have adduced evidence that might have altered the result." *Id.* (internal quotation marks omitted). Mere speculation that additional evidence might have made a difference does not suffice. *Hyde, supra*. Clearly, Plaintiff has not made that showing here.

  The only results of diagnostic imaging reflected in the instant administrative record were ordered and summarized by Dr. Hatfield, who noted that the x-rays of the lumbar spine were negative. Although Plaintiff complained to Dr. Hatfield that he suffered from lower back pain

---

[6] Dr. Nanda is a neurosurgeon.

every day that was exacerbated by prolonged walking and standing, his examination proved essentially normal; Hatfield assigned no limitations of functioning at all. In addition, and in contrast to Plaintiff's representations to Dr. Thompson and the ALJ, Plaintiff denied malaise, fatigue, edema, neck pain, and difficulty sleeping at night. Moreover, Hatfield discerned no evidence of edema, swelling, or wheezing. Plaintiff also exhibited a full range of motion of all joints.

With regard to Plaintiff's complaint that the ALJ failed to consider the effects of his obstructive sleep apnea, the court observes that Plaintiff received a CPAP machine in April 2009, following the results of a sleep study. Plaintiff did not complain to Dr. Hatfield that he suffered from sleep apnea. Moreover, Dr. Thompson did not include a diagnosis for sleep apnea in Plaintiff's April 2010 appointment – Plaintiff's first appointment after receipt of the CPAP device.

In sum, the undersigned finds that the ALJ's decision to assign no more than "some" weight to the findings of Dr. Thompson is supported by good cause. *Ward v. Barnhart*, 192 Fed. Appx. 305, 308, 2006 WL 2167675 (5th Cir. 08/02/2006) (unpubl.); *see also Nugent v. Astrue*, 2008 WL 2073891 (5th Cir. May 16, 2008) (ALJ entitled to discount treating physician's conclusory statement because it contradicted earlier treatment notes, objective medical findings, and other examining physicians' opinions); *Richard ex rel. Z.N.F. v. Astrue*, 2012 WL 2299479 (5th Cir. June 15, 2012) (unpubl.) (ALJ may discredit physician's opinion by pointing to contrary evidence, albeit however tersely); *Garth v. Astrue*, 393 F. App'x 196, 199 (5th Cir. Aug. 26, 2010) (unpubl.) (court noted that ALJ *could have* discounted treating physician's opinion because the opinion contradicted his own treatment notes and the claimant's admissions); *Vansa v. Astrue*, 423 F. App'x 381, 383 (5th Cir. April 20, 2011) (unpubl.) (upholding ALJ's decision to discount treating physician's opinion because, as the ALJ explained, it was "not supported by the

objective findings of his own clinic notes nor by the evidence as a whole."). The undersigned further concludes that Dr. Hatfield's consultative examination and opinion provide substantial support for the ALJ's residual functional capacity assessment.[7]

### Conclusion

The ALJ in this case was tasked with determining whether Plaintiff was disabled during the relevant period. In so doing, she considered the claimant's testimony, the medical record, and expert opinion evidence. The evidence was not uniform and could have supported a different outcome. However, conflicts in the evidence are for the Commissioner to resolve. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) (citation omitted); *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971) (citation omitted). This court may not "reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Newton, supra*.[8] That is not to say that the ALJ's decision necessarily is blemish-free, but procedural perfection in the administrative process is not required, and any errors do not undermine confidence in the decision.

For the foregoing reasons, the undersigned finds that the Commissioner's determination that plaintiff was not disabled under the Social Security Act, is supported by substantial evidence and remains free of legal error. Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision be **AFFIRMED**, in its

---

[7] Plaintiff does not allege any error with the ALJ's step four determination, that is not otherwise subsumed within his challenge to the sufficiency of the residual functional capacity assessment.

[8] Admittedly, this court has expanded upon some of the reasoning provided by the Commissioner for her decision. Generally, courts "only may affirm an agency decision on the basis of the rationale it advanced below." *January v. Astrue*, No. 10-30345, 2010 WL 4386754 (5th Cir. Nov. 5, 2010) (citation omitted). One exception to this rule, however, is harmless error, i.e. absent the alleged error or omission, there is "no realistic possibility" that the ALJ would have reached a different result. *Id*. This exception is applicable here.

entirety, and that this civil action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers at Monroe, Louisiana, this 25th day of June 2013.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE